Next matter before us is 23-2113, Travelers versus A-Quality Auto Sales. May it please the court. Good morning, my name is Jeff Romero, seated at council table with me is my co-counsel, Philip Sapien, and in the gallery, my other co-counsel, Joseph Sapien. We represent the Richesons and A-Quality Auto. Got a number of things to discuss today, but I think it would be useful to give a little bit of background about how we got to where we are today in order to understand what is before the court. I think the court is clear on the factual predicate for the underlying crash and accident. Our clients, Sean and Felicia Richeson, own a business and they sell used automobiles. In the course of their business, they regularly did work with RNS Auto Repair and had their vehicles serviced and repaired before placing them for sale. On the day of the incident that underlies all of this litigation, Sean and Felicia picked up a vehicle that had been repaired at RNS. As they were test driving it and taking it back to their lot or their home, the vehicle failed and it became immobile on an active highway exit ramp. Ms. Richeson exited the vehicle and upon doing so was impacted by another vehicle, pinched between the two vehicles, and suffered an above knee bilateral amputation of her legs. That's the underlying event. From that event, litigation ensued in state court. A number of parties were sued, including the other driver, RNS, and ultimately some of the governmental entities because of the maintenance of the roadway. Also in that litigation, initially, was included traveler's insurance regarding the amount of coverage that was available under the traveler's policy. In that litigation, travelers sought dismissal of the action against it and it's significant how they did so. They brought a motion to dismiss and in their motion to dismiss, which is attached as Appendix 216, they argued two things. One, that the plaintiffs, the Richesons in the state court case, did not have standing to prosecute the action. Well, they didn't have contractual privity with the insurance company. That's correct, John. And they also argued this, and this is very important, Appendix 216 is a quote from their brief presented to the District Court of the State of New Mexico. They argued that the matter wasn't right. They told the state court in New Mexico, this is the quote, as early as 1968, the New Mexico Supreme Court affirmed the defendant ensures dismissal from a case because the complaint does not present justiciable controversy between the plaintiffs and defendant insurer. They cited Rose v. Lucero and they added additional quotes from King v. Allstate and Lopez v. Jolly indicating an insurance contract merely creates a secondary liability whereby both the liability to pay and the liability to be sued are postponed until final judgment for the tort shall have been obtained. It's an important quote. Well, there's a big difference between the cases as you cite them. We tend to separate insurance cases on whether they're a first party insurance case or a second party insurance case. And I think that's some of the confusion here because in the initial action there wasn't privity, but then later the insured transferred their claims against the insurance company to your clients, thereby creating contractual privity. And that makes a big difference, doesn't it? It does and it doesn't, Your Honor, and here's why. There's a case out of New Mexico, Gallegos v. Nevada General. I happen to be an attorney with my co-counsel on that case, Ray Vargas, that indicates when you bring in a declaratory judgment action, all parties who may have their interests affected have to be parties to the claim, parties to the declaratory judgment action. And it suggests that there may be jurisdictional defect if all parties aren't included, but it also indicates that the parties who are not part of the declaratory judgment action are not impacted by such a declaration. That's an important thing in this case. The argument under Gallegos v. Nevada General, which was to be the subject of the appeal, is whether or not a declaratory judgment in and of itself is a direct action and whether the declaratory judgment action act of the state of New Mexico affords people in the position of the Richesons the opportunity to affirmatively bring the declaratory judgment action. It's not a breach of contract action, it's a declaratory judgment action. And so even though the claim has not been assigned by the perpetrator? That's correct, Your Honor. Did the New Mexico District Court say this is dismissed because you have no privilege? It did not, Your Honor. It didn't distinguish in its order of granting the dismissal? That's correct. Just like a minute order? That's exactly right. So it didn't say because you lack standing or because the issue is non-justiciable, it just dismissed. Didn't give the findings or facts behind the dismissal. Wasn't that the essence of what Travelers was saying? Is it there's no privity and so this should be dismissed? It was a two-pronged argument. It was no privity, no standing to bring the claim, and that it was non-justiciable. The quote that I just read. Both things were entwined in the argument made by Travelers. And at that time, that was true. If you're not a party to an insurance contract, you can't sue the insurer. And that's the subject of what we would appeal in the state court. And this is important, again, as we're moving along. After this dismissal, the Richesons appealed the court's dismissal of that action because the order was written in terms of being a dismissal with prejudice. And so in an opportunity or effort to challenge whether or not under Gallegos versus Nevada General and the plain terms of the Declaratory Judgment Act in New Mexico, the Richesons in A1 quality could pursue a declaratory judgment action in the first instance, we filed the appeal. New Mexico Court of Appeals dismissed that appeal because they said it wasn't ripe yet, that there was not a final order in the underlying state case. And so this is an important factor in this case. Go ahead, Your Honor. Well, I thought it was dismissal. How can you be less final than that? The Court of Appeals indicated that it didn't contain language in it to make it a final order to allow. Has that been corrected? It has not, Your Honor. So that case is still potential. And that's why I'm coming to you through this background. Because in the briefing, we've not made clear that there's still a potential state action pending. As I was reviewing the briefing to get ready for this argument, I understand that that appeal pens. It's an unperfected appeal. That or a motion for reconsideration when standing according to the district court would accrue. I think you need to move on because this is a little bit peripheral to the Gutzman case. It is and it isn't, Your Honor, but I will move on. So as I understand what you're here today on is you want us to certify this question. No, Your Honor, we want a reversal of a few things. We move to dismiss in the district court. This is the important thing in the history. After parties started to resolve, travelers sought to re-enter in the state court action. We objected because of a couple of things. One, I'm sorry, Your Honor. No, you objected in the court. The court didn't let them. OK, thank you, Your Honor. So travelers sought to intervene now in the state court action, although there had not been a final judgment. There had been no change from their argument that there was not justiciable controversy. So we objected on a couple of grounds. One, what there had been. The claims had been assigned then. They were assigned. And so that takes care of that issue. But there was not a judgment yet in place. Important in this, there are other parties that are material to the declaratory judgment action that are not yet included. As we were doing discovery, we discovered there's an issue about what the agent represented. So none of that matters. The only issue that matters in the declaratory judgment action is whether it's a single occurrence or not. And that determines whether they have to tender $500,000 or $1 million. And what's pertinent to that is what parties need to be party to the determination of that contract. That includes the agents. Cited in the briefing is Ponder and Rummel versus Lexington. The court determined this policy issue on the four corners of the policy. Ponder and Rummel indicate that extrinsic matters may determine the extent of the contract. Here, as we were doing discovery, we learned from Raina Montoya, one of the owners of R&S, that she had had represented to her by the traveler's agent that she had $1 million per occurrence coverage. That's what we sought to, in the issue regarding discovery for summary judgment. How does that impact travelers? That would be a claim against the agent for misrepresenting the policy limits to the buyer. But it wouldn't affect travelers. It might, depending on what the agent believed and what the buyer believed under Ponder versus State Farm. It could impact travelers. Is there an integration clause in this insurance contract? I'm unfamiliar with an integration clause in this contract. Well, it says everything that we've promised is in this written agreement. And nothing that we said orally has any impact. And these are the terms of the agreement. That's an integration clause. I'd be willing to bet. None of us briefed or looked at that clause, Your Honor. But Ponder and Rommel versus Lexington suggest that things outside of the contract can impact the determination of the terms of the contract. So let me ask you a question about why we have to wait to see what the judgment is before we reach this or why the federal court should wait. And I mean, I guess my question to you would be, they've tendered $500 to you, right? Correct. And $500 is not enough. Correct. OK. So there's no dispute that your demand from travelers is more than $500. That is also correct. OK. So there is a right dispute between you and travelers. The issue that arises, there's a dispute regarding the amount of coverage under the policy, but there's not a judgment. I can't control what the district court judge will award. So we don't know if he'll award more than $1 million. But why is that? Well, you'd rather have them pay you the million than wait to take the risk that the district judge isn't going to give you a judgment for $1 million. Not an option today. It's not an option for today, that's for sure. But it doesn't take away the fact that you have a dispute, a disagreement that's with travelers, as to how much is at stake here. And here's the issue regarding why the state court proceeding is important. In order to fully adjudicate that dispute, the declaratory judgment action, we have to also bring in the agent regarding the agent's representations. The district court, at least, believe we don't have standing until we have a judgment to sue the insurer. And that would apply to the agent as well. So if you tell me this, if you sue the agent and win, is it going to change the policy limits on the traveler's policy? It may, Your Honor. And that's under Gallegos v. Nevada General. It's an important case. Tell me what the holding of Gallegos v. Nevada General is. That all parties whose interests may be affected by a declaratory judgment action need to be in the action, need to be included as parties. And if they're not included, then the declaration doesn't apply to those who were not included. OK, but that doesn't address the policy limits. How does it change the policy limits if you receive a judgment against the agent? Because if under the suit with the agent, the court finds that the agent represented the terms to be something else, the court could find that those are the terms of the policy. Even though travelers is out over here, it could result in an inconsistent determination. So you're, OK, never mind. Go ahead. Happy to address that any further, Your Honor. It's clear in Gallegos v. Nevada General. And in that case, the insurer sought to litigate coverage within the tort claim, but exclude the plaintiff from participation in that. And the district court judge allowed the insurer to take a default against the insurer, leaving the plaintiff out of the discussion at all. At the court of appeals level, the court has indicated to you that all parties have to be present. And if they're not present, one, there could be a jurisdictional problem. And two, any party who's not present isn't impacted by that declaration. It doesn't help them. Did you cite this Gallegos case in your opening brief? We did, and it's also in the appendix. I can give you the citation. Gallegos, 2011, New Mexico Court of Appeals, 004. OK. And it's relative to that that we sought discovery on the summary judgment motion because of the representations of the agent and the impact that those representations may have on the coverage question under Ponder and Roman v. Lexington. That's why we asked for the discovery from the court, and we were denied. I'm looking at the list of citations, and I don't see Gallegos in your primary brief. Or Ponder. Maybe in our response brief. Let me see here. It's actually in a defendant's brief, Ponder, in their response brief. OK, but you didn't make an argument in your opening brief based on Ponder. Or Gallegos. Or Gallegos. OK. We did in terms of arguing what discovery we needed in order to join all the proper parties. And I see I'm short on time. You're out of time. Out of time, thank you. Good morning. Jennifer Noy on behalf of Travelers Casualty Insurance Company. This court should affirm the district court's decision. The district court was correct in understanding that it had subject matter jurisdiction. That is, the claim was very much right. As Judge Carson noted, there was an actual dispute between the parties about the policy limit. One in a million travelers paid $500,000. After realizing their subject matter jurisdiction, the district court was correct in applying the moon factors that this court outlined. And in so doing, that is also a discretionary standard to apply. There was no clear error in how Judge Riggs examined moon and concluded that this declaration that travelers sought, which was very much different than what was at issue back in 2017. In 2022, the Ryschens took an assignment from Travelers Insured rendering a dispute between Travelers and its insured regarding this coverage. That is what was at issue before Judge Riggs in 2023, when we filed a declaratory judgment action. After asking plaintiffs, can we go litigate this in the pending proceeding? They said no. So what is Travelers to do? Travelers asked that the federal court then look at the issue. And in so doing, Judge Riggs looked at moon and she examined the five factors, whether the declaratory action would settle the controversy. The answer was yes, the controversy between Travelers and plaintiffs would be over. Whether it would serve a useful purpose in clarifying legal relations at issue. Again, the answer was yes. Whether it was being used for procedural fencing or to provide some sort of race for residue to cut it. Again, here Judge Riggs concluded that Travelers wasn't engaging any procedural fencing. And when it was sued in 2017, the Ryschens didn't have any claims to assert anything against Travelers. They were strangers to the policies. After they got the assignment, they did. She looked at whether the DJA would increase friction between the state and federal courts or encroach upon the state's jurisdiction. And she properly concluded that it would not. There was no argue that the issue really overlapped. There wasn't an assignment back in 2017. And whether there was an alternative remedy, that could be better or more effective. Again, Judge Riggs appropriately noted that Travelers didn't have another forum to litigate the coverage issue that was presented by the assignment when Travelers and Schurz gave the Ryschens the assignment in 2022. Can you explain the friction that was brought up by your opposing counsel between the need to have the agents as part of the case and the coverage deck action? Certainly, Judge Carson. There is no such friction. The agent's participation in coverage litigation is unnecessary. What I understand they're trying to raise now is, well, maybe there was some sort of negligent procurement in the policy. Well, that's an interesting issue. But number one, this policy was sold through an independent. And it shows that it was sold through associated professionals. It's on the deck. It's in the complaint. So it was an independent agent, number one. Number two, agents aren't routinely made a part of coverage litigation. If the plaintiff believes, as they now here contend, that they somehow needed to get the agent involved, the agent wasn't involved in the state proceeding either. And the other notable thing about trying to get an agent involved about whether this policy involved what the limit is, that ship, frankly, has sailed. These plaintiffs have known since 2016 that Travelers contended, as it did throughout, that this policy provided $500,000 in coverage. If there was some sort of viable claim that this independent agent did not procure the right amount of coverage, they had the obligation to bring that claim years ago. And they didn't do it. So it's over. Game over. The policy on its face says what the coverage is. And that coverage was the amount that, throughout, Travelers was willing to pay in order to get its insureds a dismissal of the complaint that was pending in state court. Now, plaintiffs didn't want to, I mean, they wouldn't take the money for years. In 2022, they finally do. And they assign this claim, this dispute, where now suddenly Travelers insured is standing aligned with the plaintiffs, which is totally different than what was presented back in 2017. The briefs touched on Younger. I don't think Younger has any place in this proceeding. I'm not going to waste my time talking about Younger. One of the arguments they make is because the district court didn't deal with Younger, that somehow that's error. Well, I don't think they cite any case for that proceeding. But the district court kind of did, in first recognizing that there was a justiciable controversy, and then also recognizing that it couldn't be handled in the state court proceeding at that time. There was no parallel proceeding from which Travelers could obtain relief. So they sort of, yes, the district court opinion never mentions Younger. But it was recognized insofar as it doesn't apply because of the way they analyze the moon factors, which there's some overlap with the middle sex conditions with Younger. So I think you get to the same spot at the end of the day, Judge McHugh. But I don't, you're right, they don't mention Younger. But I don't think that's error, not to mention Younger. Younger's limited to three specific circumstances, none of which are even remotely relevant here. Can we infer the district court found it frivolous? I think so, Your Honor. Obviously, if there was a Younger issue, that would be something this court would review de novo. But there clearly wasn't. There was no state court proceedings, no civil enforcement proceedings like attorney discipline or that sort of thing we see, or no civil proceedings about the enforcement of a state order like you would see in like Texaco versus Pennzoil or something like that. So Younger was so out there. I mean, I don't know how else to describe it. But it was clearly not within Younger. What about this Gallegos argument? I don't remember it from the briefs. I don't understand what, honestly, Your Honor, what I didn't remember. I don't have the case here with me. And I think I brought all the cases that were cited in the briefing. But I've encountered this argument before with counsel here. And basically, what has been happening is I remember that case, Gallegos, is there have been challenges over the years in New Mexico with strangers to policies trying to ask state courts to allow them outside of the auto context, which does allow a stranger to come in, to allow them to issue declarations about the coverage when they're total strangers to the policy. I think that was something that was trying to be done in the Gallegos case. To date, the New Mexico state courts have not fought that. And if Plaintiff was so convinced that they were right back in 2017, I don't know why they didn't try to go get the judge sitting on the state bench to add the decretal language for them to take it up at that time. This case now, the state court judge dismissed their claim because there was no standing. That's what we argued in the brief, because they were strangers to the policy. Obviously, the circumstances are much different now. So even the state court in this case, there would be no reason to go address that issue, because clearly, the Richesons have standing now. They have an assignment. There is now this privity with respect to the policy. What's really interesting, I think, in this appeal is there really hasn't been any addressing by the appellants here about, they don't even argue that Judge Riggs reached the wrong decision. At the end of the day, they argue that they should have had discovery, but they never say that the policy, that she reached the wrong decision about construing this policy. There were five facts that were in dispute. Five facts we set forth in our motion. That's it. And all of them were undisputed. When the plaintiffs came forward and said they needed this discovery, none of those facts, I mean, none of the discovery really went to those facts. Frankly, we could have done it as a motion for judgment on the pleadings, because we didn't attach anything outside the pleadings. We attached the policy. We attached the underlying complaint. And that was it. So Judge Riggs, I think, was well within her discretion in concluding that discovery would not be useful to evaluate the very narrow issue, which was before the court, which was, there's one occurrence that had $500,000 in dispute, or was there $1 million owed under this policy. So when Judge Riggs evaluated the summary judgment and entered judgment in Traveler's favor, she was correct in doing so, and the judgment should be affirmed. I don't have anything else to add, unless there are any questions. Doesn't appear so. Thank you. Thank you. And I think you're out of time, but let me double check with the box. That is correct, Your Honor. All right. Oh, you have 27. Oh, he's out. I'm sorry. You're over. Thank you. All right, we will take this matter under advisement, and we appreciate your argument today. Thank you.